WILLIAM MARSHALL, Plaintiff-Appellant, v. THOMAS R. ELLISON *et al.*, Defendants (The City of Mattoon, Defendant-Appellee).

Fourth District   No. 4—84—0603

Opinion filed April 30, 1985.

John P. Geismann, of Highland, for appellant.

M. John Hefner, Jr., of Harlan Heller, Ltd., of Mattoon, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff, William Marshall, sued for injuries that he suffered when a truck hit him while he was walking on Route 45 in the city of Mattoon. Count I, against Thomas and Ruby Ellison, owners of the Wagon Wheel Package & Tap, was brought under section 6—21 of the Liquor Control Act of 1934 (Ill. Rev. Stat. 1983, ch. 43, par. 135). This count was later dismissed after a settlement. Count II, against the city of Mattoon, alleged its police officers were negligent in failing to protect the plaintiff when they knew or should have known that he was intoxicated. The trial court granted summary judgment in the city's favor, and the plaintiff appeals. At issue is whether the city owed the plaintiff any duty.

The plaintiff's accident occurred on December 5, 1980. The depositions and affidavits in the record reveal the following facts. Prior to the accident, the plaintiff had been drinking beer at the Wagon Wheel tavern. Bartenders there noticed him enter between 3:30 and 4 p.m. He departed at 7 or 7:30 p.m. According to the three bartenders, none of the plaintiff's actions indicated he was incapacitated or intoxicated. One of the bartenders did yell at the plaintiff when he threw a cue stick, but she assumed he was simply upset after losing a game of pool. Another bartender spoke with the plaintiff shortly before he left. That bartender stated the plaintiff had no difficulty walking, talking or handling money.

David Griffith, a Mattoon police officer, was on patrol alone on December 5. At 8:13 p.m., he and an officer in another car were dispatched on a call. The police log indicates the call was in reference to a drunk. Griffith responded that he was in the area at 8:19 p.m., and the dispatcher informed him that the individual was walking southbound on Route 45. Griffith and the other officer made several trips up and down Route 45 but were unable to locate the person.

At 8:37, Griffith and the other officer were dispatched to a motel

in reference to a family fight. Griffith, traveling north on 45 in the left lane at a high rate of speed, observed a white male walking south in the right lane. The individual was three to six feet from the curb. Griffith stopped his car in the left lane, opened the door, and told the individual to get off the roadway. The man threw up his hands as an acknowledgement to the officer's directive and stepped off the road. Nothing indicated to Griffith that the individual was intoxicated. After the individual had taken a few steps onto the grass, Griffith proceeded to the motel. The entire encounter with the unidentified man lasted 10 to 15 seconds. Griffith testified that he would not recognize the individual he saw that night. Griffith arrived at the motel, which was about one-half to three-quarters of a mile away, at 8:40. At 8:44, two other officers were dispatched to the scene of the plaintiff's accident.

Due to his injuries, the plaintiff had difficulty remembering the accident and communicating his recollections. He did, however, remember an encounter with a Mattoon policeman who told him to "[p]ull it back." The plaintiff estimated he had consumed 20 beers and some whiskey that day. A doctor at the hospital measured the plaintiff's blood alcohol level at .28%.

In his complaint, the plaintiff alleged the city's police officers were negligent in: (1) attempting to aid the plaintiff and protect his safety and failing to continue with the attempt; (2) failing to remove the plaintiff from the highway; and (3) violating section 12(b) of the Alcoholism and Intoxication Treatment Act, now section 15(b) of the Alcoholism and Substance Abuse Act (Ill. Ann. Stat., ch. 111½, par. 6315(b) (Smith-Hurd Supp. 1983)). The city maintains summary judgment was proper because it owed no duty to the plaintiff. Whether under the facts of a case such a relationship exists between two parties as to require a legal obligation be imposed upon one for the benefit of the other is a question of law for the court to decide. Summary judgment is proper when only a question of law is involved. *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26-27, 305 N.E.2d 535, 538.

The general rule is that a municipality and its employees are not liable for failure to supply general police or fire protection. Exceptions to this rule have been found only in cases where the municipality was under a special duty to a particular individual. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 363, 243 N.E.2d 214, 216.) Absent a special duty, therefore, a municipality will not be held liable for its failure to exercise a governmental function designed for the public health and safety. (*Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 24, 268 N.E.2d 26, 29.) A general duty would put the police in the posi-

tion of guaranteeing the personal safety of every member of the community. The general rule simply embodies the conclusion that a police department's negligence is not the legal cause of harm committed by another. *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445, 410 N.E.2d 610, 612.

■ The plaintiff urges us to adopt the rationale of the Massachusetts Supreme Court in *Irwin v. Town of Ware* (1984), 392 Mass. 745, 467 N.E.2d 1292. In *Irwin*, the plaintiffs alleged police officers had negligently failed to take into protective custody an automobile driver who was intoxicated and who subsequently caused an accident resulting in harm to the plaintiffs. The accident occurred approximately 10 minutes after police had stopped the intoxicated driver but allowed him to go. The town argued the police officers owed only a duty to the general public to enforce statutes with respect to intoxicated drivers. The court, however, concluded the public duty rule was no bar. The court decided a special relationship exists between a police officer who negligently fails to remove an intoxicated motorist from the highways and a member of the public who suffers an injury as a result of that failure.

In finding a special relationship, the *Irwin* court relied primarily on the foreseeability of the harm to a member of the public from an officer's failure to act.

> "Where the risk created by the negligence of a municipal employee is of immediate and foreseeable physical injury to persons who cannot reasonably protect themselves from it, a duty of care reasonably should be found." 392 Mass. 745, 756, 467 N.E.2d 1292, 1300.

We decline to adopt the approach taken by the court in *Irwin*. First, we know that most courts have refused to find a cause of action in similar cases. (See *Jackson v. Clements* (1983), 146 Cal. App. 3d 983, 194 Cal. Rptr. 553; *Everton v. Willard* (Fla. App. 1983), 426 So. 2d 996; *Crosby v. Town of Bethlehem* (1982), 90 App. Div. 2d 134, 457 N.Y.S.2d 618; *Fusilier v. Russell* (La. App. 1977), 345 So. 2d 543; *Ivicevic v. City of Glendale* (1976), 26 Ariz. App. 460, 549 P.2d 240; *Massengill v. Yuma County* (1969), 104 Ariz. 518, 456 P.2d 376; but see *Huhn v. Dixie Insurance Co.* (Fla. App. 1984), 453 So. 2d 70.) "The special duty required to maintain the action cannot be established by the mere fact that someone with whom the officer had prior contact ·subsequently injured the plaintiff." (*Shore v. Town of Stonington* (1982), 187 Conn. 147, 156, 444 A.2d 1379, 1383.) Nor should a cause of action arise simply because the officer had prior contact with the plaintiff himself.

In addition, our supreme court has warned against confusing foreseeability with the concept of duty and in using foreseeability to find a duty.

"Professor Leon Green discusses foreseeability in distinguishing between the judge's rule in determining the duty owed and a jury's rule in determining the violation of the duty by stating:

'[H]owever valuable the foreseeability formula may be in aiding a jury or judge to reach a decision on the negligence issue, it is altogether inadequate for use by the judge as a basis of determining the duty issue and its scope. The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than foreseeability that may condition a judge's imposing or not imposing a duty in the particular case, but the only factors for the jury to consider in determining the negligence issue are expressed in the foreseeability formula.' Green, *Foreseeability in Negligence Law*, 61 Colum. L. Rev. 1401, 1417-18.

Thus, although foreseeability is generally accepted as the test to be applied by a jury in determining if a duty has been violated, in defining the scope of the duty, other elements must be considered by the court." (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 544, 301 N.E.2d 307, 309-10.)

The existence of a duty ultimately depends upon choices between competing policies. *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445, 410 N.E.2d 610, 612.

Most importantly, the result reached in *Irwin* is contrary to the established law of this State. In *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 440 N.E.2d 942, *aff'd in part and rev'd in part* (1983), 98 Ill. 2d 158, 456 N.E.2d 116, a minor was injured when the car in which he was riding struck a speed limit sign. She and her father sued county and municipal governments for negligently failing to post patrols or install speed control equipment in the area. The plaintiff alleged the sign was constantly and repeatedly used for the purpose of clocking vehicles moving in a quarter-mile distance at speeds which greatly exceeded the legal limit. The driver of the car was using the sign for that purpose when he lost control. The plaintiffs argued the defendants owed them a special duty to enforce speed restrictions in the area.

The appellate court found no special duty was owed to the plaintiffs. The court held:

"In order for a municipality to owe a special duty toward an

individual as contrasted with the public at large, the following requirements must be met: (1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality." (109 Ill. App. 3d 400, 407, 440 N.E.2d 942, 947.)

The court noted that even assuming the plaintiffs met the first three requirements, they made no allegation which would lead to the conclusion that the minor's injuries occurred while she was under the direct and immediate control of the defendants. In this case, the plaintiffs' complaint contains the same defect. On appeal in *Curtis*, the plaintiffs urged the supreme court to find that the defendants did owe the plaintiffs, individually, a duty to patrol or otherwise deter speeding. The supreme court simply stated the appellate court's treatment of the issue was both adequate and correct. 98 Ill. 2d 158, 165, 456 N.E.2d 116, 120.

The plaintiff argues section 15(b) of the Alcoholism and Substance Abuse Act created a special duty in his favor. The statute provides:

"A person who appears to be incapacitated while in a public place by alcohol and who shows symptoms of the physical disabilities or the emotional and social disabilities associated with alcoholism on probable cause shown shall be taken into protective custody by the police and forthwith brought to a detoxification facility or other facility customarily available for detoxification. If no detoxification facility is readily available he shall be taken to an emergency medical service customarily used for incapacitated persons. The police, in detaining the person and in taking him to a detoxification facility, are taking him into protective custody and shall make every reasonable effort to protect his health and safety. In taking the person into protective custody, the detaining officer may take reasonable steps to protect himself. A taking into protective custody under this Section is not an arrest. No entry or other record shall be made to indicate that the person has been arrested or charged with a crime." (Ill. Ann. Stat., ch. 111½, par. 6315(b) (Smith-Hurd Supp. 1983); formerly Ill. Rev. Stat. 1981, ch. 91½, par. 512(b); also Ill. Rev. Stat. 1977, ch. 91½, par. 512(b), effective July 1, 1976.)

The plaintiff contends the Act was designed for the benefit of alco-

holics and intoxicated persons engaged in public drunkenness rather than for the benefit of the public as a whole. (See Ill. Ann. Stat., ch. 111½, par. 6302 (Smith-Hurd Supp. 1983).) The city points to section 15(g) as evidence that the legislature did not intend to create any additional civil liability under the Act. Section 15(g) states that no authorized person acting in good faith and without negligence in connection with the detention, discharge, or taking into protective custody of an individual under the Act shall incur any liability, civil or criminal, by reason of these acts. Ill. Ann. Stat., ch. 111½, par. 6315(g) (Smith-Hurd Supp. 1983).

The issue is whether the legislature intended to create a private duty under the Act. The distinction between a public and private duty depends on the many policy considerations which lead the law to determine whether interests of a particular type are entitled to protection against conduct by officials. (*Shore v. Town of Stonington* (1982), 187 Conn. 147, 152-53, 444 A.2d 1379, 1382.) When a statute is involved, the more specific and narrow the duty required by the statute, the more likely it is that the duty has been narrowed from a general duty to the public to a specific duty to an individual. *Oleszczuk v. State* (1979), 124 Ariz. 373, 377, 604 P.2d 637, 641.

In construing a similar statute, the court in *Rodriguez v. City of Cape Coral* (Fla. App. 1984), 451 So. 2d 513, held that neither a city nor its police officer could be held liable for not taking an intoxicated person into protective custody under the statute. The court decided the determination of whether to take an individual into protective custody must be left to the officer's discretion.

"The determination of whether a person appears to be incapacitated is an officer's judgmental decision which is limited by time, lighting conditions, communications and other circumstances." 451 So. 2d 513, 516.

Like the Florida statute, section 15(b) requires an officer to exercise his professional judgment in determining whether an individual appears to be incapacitated. We do not believe the public interest would be served by allowing a jury of laymen with the benefit of 20/20 hindsight to second-guess a policeman's decision. *Shore v. Town of Stonington* (1982), 187 Conn. 147, 157, 444 A.2d 1379, 1384.

The plaintiff asserts the use of the word "shall" in the statute implies a mandatory obligation. "Shall," however, does not have an exclusive, fixed or inviolative meaning; while it ordinarily suggests the mandatory, it may properly be construed in a directory sense, depending upon the intent of the legislature. (*In re Application of Rosewell* (1983), 97 Ill. 2d 434, 440-41, 454 N.E.2d 997, 999-1000.) We believe

the legislature simply intended to give police authority to take an incapacitated person into custody rather than to create a special duty. Protecting intoxicated persons is not a policeman's only responsibility, nor did section 15(b) make it his predominant one. The police still owe a duty to protect the general safety of all persons. They are "charged with the preservation of public order and tranquility, the promotion of public health, safety, and morals, and the prevention, detection, and punishment of crimes." (Black's Law Dictionary 1041 (5th ed. 1979).) The very nature of law enforcement requires that an officer have freedom to exercise his discretion. In the present case, Griffith was responding to an emergency call when he encountered the individual on the road. To impose liability upon him or the city would render his duty under section 15(b) paramount to all of his other duties. We conclude the legislature did not intend to create a cause of action under this statute for a failure to take a person into protective custody.

Finally, we agree with the trial court that section 15(b) was not applicable under the facts of this case. Although it is uncontradicted that the plaintiff was intoxicated, the statute requires probable cause shown that the person appear incapacitated by alcohol. " 'Incapacitated by alcohol' means that a person, as a result of the use of alcohol, is unconscious or otherwise exhibits by his overt behavior, or by his extreme physical debilitation, an inability to care for his own needs or recognize the obvious danger of his situation or make a rational decision with respect to his need for treatment." (Ill. Ann. Stat., ch. 111½, par. 6304.12 (Smith-Hurd Supp. 1983).) Nothing in the record suggests Griffith had probable cause to believe the person he encountered was incapacitated by alcohol. Furthermore, section 15(b) requires the individual to display symptoms of the physical, emotional, or social disabilities associated with alcoholism. None of the evidence indicated the plaintiff was an alcoholic or displayed any of the disease's symptoms. While these contentions were raised in the complaint, they are not supported by evidentiary facts in the affidavits or depositions, and, therefore, summary judgment was appropriate. *Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 431 N.E.2d 48.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

MILLS and TRAPP, JJ., concur.