NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221033-U

NO. 4-22-1033

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 14, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Estate of JAMES A. BAKER, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Natosha R. Edwards, | ) | Ford County |
|     Petitioner-Appellant, | ) | No. 20P31 |
|     v. | ) | |
| Randal R. Baker, | ) | Honorable |
|     Respondent-Appellee). | ) | Matthew J. Fitton, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court reversed and remanded with directions, finding
(1) petitioner's allegations were not *res judicata* and gave rise to inferences that
decedent lacked testamentary capacity and (2) the circuit court abused its
discretion when it dismissed, with prejudice, petitioner's complaint without first
allowing petitioner leave to amend.

¶ 2    James A. Baker died in October 2020, leaving a will which named his daughter,

petitioner Natosha R. Edwards, and brother, respondent Randal R. Baker, as beneficiaries of his

estate. In May 2021, Natosha filed a petition to contest the validity of James's will. Randal, as

executor of James's estate, filed a combined motion under section 2-619.1 of the Code of Civil

Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)), asking for the petition to be dismissed. In

January 2022, the circuit court dismissed the petition with prejudice.

¶ 3        Natosha appeals, arguing the circuit court (1) erred in granting Randal's motion to

dismiss and (2) abused its discretion by dismissing her petition with prejudice without first

allowing her an opportunity to file an amended petition. We reverse and remand with directions.

¶ 4                                I. BACKGROUND

¶ 5        In November 2017, James executed a last will and testament which bequeathed

seven tracts of land, James's entire stock in Baker Scrap Inc., and all equipment belonging to

Baker Scrap Inc. to Randal. The will left the entire residue of the estate to Natosha and provided

that, if Natosha did not survive James—which she did—the residue of James's estate would go

to James's son, Joshua Baker. In December 2020, Randal filed a petition for probate of the will

and for letters testamentary. The petition named Joshua and Natosha as heirs. As legatees, the

petition named Randal and Natosha.

¶ 6        In January 2021, Natosha filed a petition to require formal proof of James's will

in the manner required by section 6-21 of the Probate Act of 1975 (Probate Act) (755 ILCS

5/6-21 (West 2020)). According to a bystander's report (of hearings conducted by the circuit

court on April 1 and May 6, 2021) filed by the parties, Kyra Kennedy testified she witnessed the

signing of the will in her office, and at the time of its execution, James appeared to know what he

was signing and to be of sound mind. Lisa Stahl also testified she witnessed the signing of the

will, and she stated James signed the will voluntarily and appeared to be of sound mind. Randal

testified he was present when James signed the will. Randal averred James seemed to be of

sound mind and memory, and it appeared to Randal that James knew he was signing his last will

and testament. Finally, although unable to procure the testimony of the final witness to James's

will, Randal argued the will "had a self-authentication clause with a notary signature and

therefore the technical requirements to the execution of the [w]ill were met." The court agreed and subsequently admitted the will to probate.

¶ 7      On May 26, 2021, Natosha filed a petition to contest the validity of James's will. The petition alleged James lacked testamentary capacity because, prior to his stroke in September 2016, James told Natosha he had executed a will and was leaving his entire estate to his children. According to the petition, James was diagnosed with dementia following his stroke and was unable to feed, bathe, clothe himself, or use the bathroom independently. The petition also stated James urinated in his dryer and placed bowel movements on plates from which he was eating multiple times. The petition further alleged James was unable to hold a conversation, mumbled to himself constantly, and mistook Natosha for his ex-wife. Finally, the petition claimed James's "ability to understand questions, or to articulate wishes or directions, did not improve" from the time of his stroke until his death in October 2020.

¶ 8      In July 2021, Randal filed a combined motion pursuant to section 2-619.1 of the Code seeking to dismiss Natosha's petition on the grounds it failed to state a claim upon which relief could be granted and was barred by the doctrine of *res judicata*. Specifically, under section 2-619(a)(4) of the Code (735 ILCS 5/2-619(a)(4) (West 2020)), Randal contended the circuit court's admission of James's will to probate "in essence *** ruled that [James's] *** [w]ill was valid," and therefore, Natosha's will contest was subject to dismissal as being barred by a prior judgment. Pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), Randal asserted Natosha's allegations were "merely general conclusions" and insufficient to allege James lacked testamentary capacity on the day the will was signed.

¶ 9      In January 2022, the circuit court entered an order granting Randal's motion to dismiss Natosha's petition to contest the validity of James's will pursuant to sections 2-615 and

2-619(a)(4) of the Code, with prejudice. Under section 2-615, the court noted conclusions of fact were insufficient to state a cause of action regardless of whether they generally inform a party of the nature of the claim. Thus, the court found Natosha's petition stated general conclusions as to James's mental unsoundness because it failed to "set out specific times, dates[,] or places of the various incidents alleged." Pursuant to section 2-619(a)(4), the court found the arguments "regarding [James's] *** cognitive well-being and understanding" raised in Natosha's petition were *res judicata* because the court previously heard evidence related to James's state of mind during the admission proceedings.

¶ 10 In February 2022, Natosha filed a motion to reconsider and requested leave to file an amended petition with a proposed amendment, alleging James was diagnosed with dementia and major depressive disorder one day after signing the November 2017 will. The circuit court denied Natosha's motion.

¶ 11 This appeal followed.

¶ 12        II. ANALYSIS

¶ 13 On appeal, Natosha argues the circuit court (1) erred in granting Randal's motion to dismiss and (2) abused its discretion by dismissing her petition with prejudice without first allowing her an opportunity to file an amended petition. We address each of Natosha's arguments in turn.

¶ 14      A. Section 2-619.1 Motions to Dismiss

¶ 15 Section 2-619.1 of the Code permits a litigant to combine a section 2-615 motion to dismiss with respect to the pleadings and a section 2-619 motion for involuntary dismissal into a single pleading. 735 ILCS 5/2-619.1 (West 2020); *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39.

¶ 16 Pursuant to section 2-615, the movant challenges the legal sufficiency of the complaint based on certain defects or defenses apparent on the face of the complaint. *Walworth Investments*, 2022 IL 127177, ¶ 39. "In ruling on a section 2-615 motion, a court must accept as true all well-pleaded facts and all reasonable inferences therefrom, to determine whether the complaint's allegations—construed in the light most favorable to the plaintiff—are sufficient to establish a cause of action upon which relief may be granted." *Walworth Investments*, 2022 IL 127177, ¶ 39. In other words, section 2-615 motions can be considered "so what" motions, where the movant says, "The facts the plaintiff has pleaded do not state a cause of action against me." (Internal quotation marks omitted.) *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. "[A] cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006). However, a plaintiff must allege facts to support each element of a legally recognized cause of action (*Sharp v. Baldwin*, 2020 IL App (2d) 181004, ¶ 8, 151 N.E.3d 725) and may not rely on mere conclusions of law or facts unsupported by specific factual allegations. *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 31.

¶ 17 A section 2-619 motion admits the legal sufficiency of the complaint but raises defects, defenses, or other affirmative matter appearing on the face of the complaint or established by external submissions that defeat the claim. *Basta*, 2022 IL App (2d) 210234, ¶ 32. Under section 2-619, the movant says "yes, but," *i.e.*, "Yes, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." (Internal quotation marks omitted.) *Reynolds*, 2013 IL App (4th) 120139, ¶ 31. In particular, a motion under section 2-619(a)(4) of

the Code contends a plaintiff's claim is "barred by a prior judgment." 735 ILCS 5/2-619(a)(4) (West 2020).

¶ 18    Under either section 2-615 or section 2-619, our standard of review is *de novo*. *Hadley v. Doe*, 2015 IL 118000, ¶ 29, 34 N.E.3d 549.

¶ 19                                    1. *Res Judicata*

¶ 20    Natosha first argues the circuit court erred in granting Randal's motion to dismiss the petition under section 2-619(a)(4) of the Code because, under Illinois law, issues raised in an admission proceeding may be relitigated in a will contest. We agree.

¶ 21    " '*Res judicata* is an equitable doctrine that bars the relitigation of issues that were raised and adjudicated in a prior proceeding.' " *People v. Poole*, 2022 IL App (4th) 210347, ¶ 81 (quoting *People v. Kines*, 2015 IL App (2d) 140518, ¶ 20, 37 N.E.3d 428). The doctrine bars not only what was actually decided in the prior proceeding, but also what could have been decided. *Young v. Wilkinson*, 2022 IL App (4th) 220302, ¶ 34, 213 N.E.3d 486. "For *res judicata* to apply, three requirements must be met: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies." *A&R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 16, 124 N.E.3d 962.

¶ 22    The two-step process for the routine admission and then substantive challenge to the validity of a will is provided for in the Probate Act (755 ILCS 5/6-21, 8-1 (West 2020)) and settled law. When a timely will contest is initiated, the order admitting the will to probate is not final as to the validity of the document. *In re Estate of Alfaro*, 301 Ill. App. 3d 500, 503, 703 N.E.2d 620, 622 (1998). If a will contest is initiated, then the question addressed is not whether the will was properly admitted, but whether the will should be declared invalid (*Alfaro*, 301 Ill. App. 3d at 503), and any ground which, if proved, invalidates the document as the will of the

decedent may be raised in a will contest (*Shelby Loan & Trust Co. v. Milligan*, 372 Ill. 397, 403, 24 N.E.2d 157, 160 (1939)). Thus, "the admission of a will to probate is not *res judicata* as to issues that may be raised in a later will contest, and such a contest allows the relitigation of the same issues raised in the admission proceeding." *Alfaro*, 301 Ill. App. 3d at 503; *In re Estate of Mayfield*, 288 Ill. App. 3d 534, 538, 680 N.E.2d 784, 787 (1997) ("The admission of a will to probate is not *res judicata* on issues raised in a will contest.").

¶ 23 Applying these principles to the instant case, while Randal asserts the circuit court "in essence *** ruled that [James's] *** [w]ill was valid" during the admission proceedings, the court's order admitting James's will to probate was not final as to the validity of the document. Although evidence was presented regarding James's mental unsoundness during the admission proceedings, Natosha was free to raise issues "regarding [James's] *** cognitive well-being and understanding" in the present will contest because "such a contest allows the relitigation of the same issues raised in the admission proceeding." *Alfaro*, 301 Ill. App. 3d at 503. Therefore, Randal's assertion that Natosha's will contest was subject to dismissal as being "barred by a prior judgment" (735 ILCS 5/2-619(a)(4) (West 2020)) presents no defense, defect, or affirmative matter sufficient to bar or defeat the petition. Consequently, the court erred in granting Randal's section 2-619(a)(4) motion to dismiss.

¶ 24                                    2. *Testamentary Capacity*

¶ 25 Natosha next argues the circuit court erred in granting Randal's motion to dismiss under section 2-615 of the Code on the ground her petition merely stated general conclusions of fact and thus failed to state a claim upon which relief could be granted. We agree.

¶ 26 To state a claim for lack of testamentary capacity, it is not necessary to specify the name of the unsoundness of mind alleged, what caused it, or even "how it came about that the

unsound mind and memory caused [the] writing to be drawn and signed," as these are "matters of evidence that need not be alleged." (Internal quotation marks omitted.) *DeHart v. DeHart*, 2013 IL 114137, ¶ 20, 986 N.E.2d 85. Rather, our supreme court has defined the "standard test" for testamentary capacity as follows: "the testator must be capable of knowing what his property is, who are the natural objects of his bounty, and also be able to understand the nature, consequence, and effect of the act of executing a will." (Internal quotation marks omitted.) *DeHart*, 2013 IL 114137, ¶ 20. "The absence of any one of these requirements would indicate a lack of testamentary capacity." *DeHart*, 2013 IL 114137, ¶ 20.

¶ 27        Although "[p]roof of a testator's lack of testamentary capacity, to be relevant, must pertain to at or near the time the will was made" (*In re Estate of Harn*, 2012 IL App (3d) 110826, ¶ 26, 972 N.E.2d 1227), it is "well recognized that evidence of the mental condition of [a] testator a reasonable time before or after the making of a will is relevant to show his mental condition at the time of the execution of the instrument [citations], especially where the mental condition is of a continuous nature." *In re Estate of Ciesiolkiewicz*, 243 Ill. App. 3d 506, 512, 611 N.E.2d 1278, 1283 (1993); see *Kuster v. Schaumburg*, 276 Ill. App. 3d 220, 227, 658 N.E.2d 462, 467 (1995) (stating our supreme court "has held that proof of the mental condition of a testator two years before the execution of a will was properly received").

¶ 28        Here, Randal contends Natosha's petition failed to state a cause of action for testamentary incapacity because it "lacked the necessary allegation that the will itself was the product of unsound mind and memory." However, in ruling on a section 2-615 motion to dismiss, the court considers "whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and *all reasonable inferences* that may be drawn from those facts as true, are sufficient to state a cause of action upon which relief

may be granted." (Emphasis added.) *Reynolds*, 2013 IL App (4th) 120139, ¶ 25. Even though Natosha did not expressly allege it, we find a reasonable inference can be made that James was of unsound mind and memory when he executed the November 2017 will. Besides, Randal could reasonably object to such an allegation as being a conclusion, not fact.

¶ 29 In her petition, Natosha alleged James was diagnosed with dementia and unable to eat, dress, bathe, or use the bathroom independently after he suffered a stroke in September 2016. James was incapable of holding a conversation and mumbled to himself constantly. He was also found urinating in his dryer and placing bowel movements on plates from which he was eating multiple times. From the time of his stroke until his death in October 2020, Natosha alleged she saw no improvement in James's ability to articulate himself or understand questions. Moreover, Natosha alleged James mistook her for his ex-wife and, before suffering his stroke, told her he previously executed a will which left his children the entirety of his estate. Yet James did not name any of his children as beneficiaries of his seven tracts of land or his stock of Baker Scrap Inc., and he effectively disinherited his son with no apparent reason for doing so.

¶ 30 Taken as a whole and interpreting the well-pleaded facts in the light most favorable to her, Natosha's allegations support the specific inferences that James was unable to understand the consequences of executing a will and did not recognize or remember the loved ones he might choose to include in his will. See *DeHart*, 2013 IL 114137, ¶ 20 (absence of any one of these requirements would indicate a lack of testamentary capacity). Consequently, the circuit court erred in granting Randal's section 2-615 motion to dismiss.

¶ 31 B. Leave to Amend

¶ 32    Finally, Natosha contends the circuit court abused its discretion by dismissing her petition to contest the validity of James's will with prejudice without first granting her leave to file an amended petition. We agree.

¶ 33    "Trial courts should exercise their discretion liberally in favor of allowing amendments where doing so furthers the ends of justice." *Addison v. Distinctive Homes, Ltd.*, 359 Ill. App. 3d 997, 1003, 836 N.E.2d 88, 94-95 (2005). In determining whether a petitioner should be granted leave to amend the complaint, we consider "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-16 (1992). "To be entitled to an order granting leave to amend, a party must meet all four *Loyola* factors." *Devyn Corp. v. City of Bloomington*, 2015 IL App (4th) 140819, ¶ 89, 38 N.E.3d 1266. We will not overturn the court's decision to dismiss the complaint with prejudice absent an abuse of discretion. *Loyola*, 146 Ill. 2d at 273-74.

¶ 34    In the present case, the circuit court made no findings supporting its decision to deny Natosha's request to amend her petition or even mention the standard. We note Natosha filed her request to amend as part of her motion to reconsider, and the amendment would seem to cure the deficiencies upon which the court based its dismissal under section 2-615 of the Code. See *Bowe v. Abbott Laboratories, Inc.*, 240 Ill. App. 3d 382, 389, 608 N.E.2d 223, 227 (1992) ("If, by amendment, a plaintiff can state a cause of action, a case should not be dismissed with prejudice on the pleadings."). The motion to reconsider was timely filed within 30 days of the court's decision to grant Randal's motion to dismiss. See *Seibring v. Parcell's Inc.*, 159 Ill. App.

3d 676, 681, 512 N.E.2d 394, 398 (1987) (holding the timeliness factor favors amendment when no trial date has been set). Additionally, Natosha's proposed amendment did not raise new legal theories. See *Selcke v. Bove*, 258 Ill. App. 3d 932, 938-39, 629 N.E.2d 747, 752 (1994) (finding no prejudice where the proposed amendment would only provide a greater factual basis for the same claim that was already before the court). Finally, it does not appear Natosha was afforded any prior opportunities to amend her petition at this early stage of the proceedings. See *Taylor, Bean & Whitaker Mortgage Corp. v. Cocroft*, 2018 IL App (1st) 170969, ¶ 46, 106 N.E.3d 379 (stating the primary consideration in deciding whether to grant a motion for leave to amend is whether it would further the ends of justice).

¶ 35　　　　Considering all the *Loyola* factors weigh in favor of permitting Natosha the opportunity to amend the petition and how the circuit court failed to make any findings concerning them, we find the court abused its discretion by dismissing the petition with prejudice. We therefore reverse the court's decision and remand with instructions to allow Natosha leave to file an amended petition.

¶ 36　　　　　　　　　　　　III. CONCLUSION

¶ 37　　　　For the foregoing reasons, we reverse the dismissal of Natosha's petition and remand with directions.

¶ 38　　　　Reversed and remanded with directions.

- 11 -